IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES A. SOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:03-0083 |
| ) | JUDGE HAYNES |
| LEVEL VALLEY CREAMERY, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, James A. Sowell, filed this pro se action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against the Defendant Level Valley Creamery, Inc., his former employer. Plaintiff's original claim is that he was denied promotions because of his race from 1996 to 2000 and that the Defendant required him to train new company production supervisors. With leave of Court, Plaintiff amended his complaint to assert, among other things, a claim for constructive discharge based upon his race and claims under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq., ("THRA") as well as common law claims for injury, libel, conspiracy and intentional infliction of emotional distress. In his various papers, Plaintiff has effectively presented an additional claim for a hostile work environment. At the time of the Plaintiff's motion to amend his complaint, the Defendant had filed its motion for summary judgment. A court's failure to consider a pending motion to amend the complaint before granting summary judgment is an abuse of discretion. Ellison v. Ford Motor Co., 847 F.2d 297, 300-01 (6th Cir. 1988).

Before the Court is the Defendant's motion for summary judgment, (Docket Entry No. 72), the Defendant's motions to dismiss (Docket Entry No. 92 and 136), and the Defendant's motion for

sanctions (Docket Entry No.108). The Defendant also seeks a ruling that its unanswered requests for admissions should be deemed admitted. (Docket Entry No.150 at p.2). In its motions, the Defendant argues, in essence: (1) that Plaintiff's state law claims are time-barred under the applicable statutes of limitations; (2) that Plaintiff's new Title VII claim for "hostile working conditions" was never raised nor administratively exhausted before the Equal Employment Opportunity Commission ("EEOC") nor the Tennessee Human Rights Commission ("THRC");[1] (3) that the latter claim is also time-barred and prohibited by Fed. R. Civ. P. 15(c); and (4) that Plaintiff's sole remaining claim for the 2000 promotion decisions lacks the factual basis to support a judgment on that claim.

In his response to the Defendant's motions (Docket Entry No. 142), Plaintiff announced his voluntary dismissal of his THRA claims as well as his state common law claims. Id. at 2-3. Yet, Plaintiff insists that he was denied due process when he was not allowed to apply for a promotion in 2000. Plaintiff's hostile work environment claim involves William David Moss, the Defendant's general manager at the plant where Plaintiff worked. In addition, in his April 17, 2006 deposition, Plaintiff clarified that his Title VII promotion claim does not include the Defendant's lead hourly positions nor the promotions of Tammy McElhiney, Tim Davis or Abel Margarito to those positions.

> Q. Okay. Now just to be clear, you're not claiming that you were denied appointment to lead positions with the company in this lawsuit, are you?
>
> A. I never spoke on the leads. I said that the - I have no quarrel with me, me personally, for a lead position. That's not management - that, to me, is a lateral step. I didn't want a lead position.
>
> Q. So just to be clear, you're not claiming that you were discriminated against by not

---

[1] See Exhibit A, April 27, 2006, Amended Complaint, Court Docket No. 133.

being appointed to a lead position at any time during your employment with the company, correct?

A. Not me personally, but maybe other African-Americans.

(Docket Entry No. 148, Attachment 1 thereto, Plaintiff's Deposition at p. 144-45).

Based on Plaintiff's agreement to non-suit his state law claims and his deposition testimony, the Court concludes that Plaintiff's remaining Title VII claim is his failure to promote claim, his hostile work environment claim and his constructive discharge claim.

Plaintiff's original Title VII administrative charge and complaint was for the denial of promotion that is a distinct claim under Title VII. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). The hostile work environment claim is a distinct legal claim under Title VII with different factual requirements than a failure to promote claim. Thus, the hostile environment claim is not reasonably related to any promotion claim and cannot be pursued in this action. Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992).

In addition, Plaintiff never pursued an administrative charge for his hostile work environment nor his constructive discharge claim. Plaintiff failed to allege that he file such an administrative charge of discrimination with either the EEOC or the THRC. This filing is required as a condition precedent for his Title VII action. Zipes v. T.W.A., 455 U.S. 385, 392-98 (1982). Moreover, to pursue a Title VII claim, "[a] party ... must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." Nat'l R.R. Passenger Corp v. Morgan, 536 U.S. 101, 110 (2002) As the Supreme Court explained:

> A discrete ...[alleged] discriminatory act "occurred" on the day it "happened." A party ... must file a charge within 180 or 300 days of the date of the act or lose the ability to recover for it.

3

> \* \* \*
> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of [alleged] discrimination . . . constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

Id. at 110-11.

Plaintiff filed his Title VII administrative charge on January 3, 2001. The 300 days prior to the filing of his charge is May 9, 2000. There are not any circumstances that suggest any tolling of this limitation period. Moreover, after July 31, 2000, the Company did not hire any external candidates or promote any existing employees into a production supervisor position at any point in 1999 or 2000. (Docket Entry No. 85 Duffey Affidavit ¶¶ 9, 16). Thus, the Court concludes that because Plaintiff failed to file any claim with the EEOC or THRC for any promotion decision in 1996-1999, the Defendant is entitled to judgment as a matter of law on those claims leaving only Plaintiff's 2000 promotion claim. Accordingly, Plaintiff's hostile work environment and constructive discharge claims are barred as a matter of law. Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); 42 U.S.C. § 2000e-5(e)(1).

Before addressing the Defendant's motion for summary judgment, the Court notes the Defendant's request under Fed. R. Civ. P. 36(a) and (b) that the Court deem admitted certain of its requests for admissions based upon Plaintiff's failure to respond to them. These requests are as follows:

**Request for Admission No. 2:**
Admit or deny that in May of 2000, the day after Level Valley Creamery Operations Manager William J. Merrick personally informed you that the Company had a vacancy(s) and/or opening(s) for the position of production supervisor.

**Request for Admission No. 7:**
Admit or deny that in May of 2000, the day after Level Valley Creamery Operations

4

Manager William J. Merrick personally informed you that the Company had a vacancy(s) and/or opening(s) for the position of production supervisor and that the Company wanted you to consider applying for the potential promotion, you personally informed Mr. Merrick that you were not interested in applying for the potential promotion to production supervisor.

**Request for Admission No. 11:**
Admit or deny that Robert J. Underwood would be telling the truth if he signed an affidavit, and/or testified at trial, under oath and threat of penalty of perjury stating that "...in May of 2000, James A. Sowell expressly stated to me that he had also been recently approached by Operations Manager William Merrick and offered the opportunity to apply for a promotion to production supervisor and that he (Mr. Sowell) had also subsequently informed Mr. Merrick that he declined the Company's offer and the opportunity to apply and be considered for a production supervisor promotion.

(Docket Entry No. 148, Attachment 3 thereto)

Where a party fails to respond to another party's requests for admissions, Fed. R. Civ. P. 36(a) states:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Id. See also Fed. R. Civ. P. 36(b).

Here, Plaintiff failed to respond to the cited requests to admit and has failed to explain his failure to do so. Thus, these requests are deemed to be admitted. Although Plaintiff has since filed an affidavit on the subjects in these requests, (Docket Entry No. 129), Plaintiff cannot ignore the Defendant's legitimate discovery requests and then file an affidavit on the same subject to create a material factual dispute and avoid an award of summary judgment.

### Defendant's Motion for Summary Judgment

5

## 1. Finding of Facts[2]

Level Valley has a dairy production facility in Antioch, Tennessee, that manufactures a variety of dairy products, including butter, butter-related products, anhydrous milk, plastic cream, evaporated and dried milk, sweetened condensed milk, and dried milk powder. (Docket Entry No. 85, Duffey Affidavit at ¶ 2). Defendant hired Plaintiff as a laboratory technician in 1993. Id. ¶ 4, Exhibits D, K, L.

In April, 1999, a production supervisor vacancy arose on the Defendant's third shift and the Defendant initially recruited external candidates for this vacancy, id. ¶¶ 6-9, but initially did not hire nor promote any of its employees to this position. Id. ¶ 9. In March 2000, another production supervisor vacancy arose on the Defendant's second shift, id. ¶ 10, and the Defendant initially sought external candidates. Id. at ¶ 11. In May 2000, the Defendant's plant management staff decided to consider its employees for these supervisor positions. Id. This meeting generated the following potential candidates: Chris Sawyer, Alex Mulisa, Plaintiff James A. Sowell, Dorris Clinard, Robert Underwood, Eric Hannah, Abel Margarito, Tim Davis and Tammy McElhiney. Id. ¶ 11. (Docket entry No. 83, Northcutt Affidavit at ¶6).

After this meeting, John L. Northcutt and William J. Merrick, the plant's operations managers inquired of Plaintiff, Alex Mulisa, Tammy McElhiney, Abel Margarito, Tim Davis, Dorris

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed.R.Civ.P. 56(d).

6

Clinard, Robert Underwood, Eric Hannah and Chris Sawyer in May of 2000, if any had an interest in applying for these promotions to production supervisor on the second and third shifts. (Docket Entry No. 82,Merrick Affidavit at ¶¶ 5-7and Docket Entry No. 83, Northcutt Affidavit ¶¶ 6-10). Alex Mulisa and Plaintiff are African-Americans. (Docket Entry No. 85, Duffey Affidavit ¶ 12.

John Northcutt approached Mulisa to explain that the company wanted Mulisa to apply and asked him to apply for the promotion. (Docket Entry No.83, Northcutt Affidavit at ¶ 9). Mulisa, however, declined. (Docket Entry No. 73, Mulisa Affidavit at ¶¶ 2 and 3). During the same visit, Merrick approached Plaintiff in the laboratory and described their discussion about this promotion as follows.

> At that same time in the Company's lab in May of 2000, I [William Merrick] personally approached Plaintiff James A. Sowell and informed Mr. Sowell about the production supervisor vacancies that the Company wanted him to consider applying for and asked him whether he wanted to apply for the potential promotion. In response, Mr. Sowell personally told me that he wanted to think it over. After I informed Mr. Sowell in the Company's lab about the production supervisor vacancies in May of 2000, I personally approached Plaintiff James A. Sowell at work the next day and asked him if he had given any thought to applying and being considered for the potential promotion to production supervisor and whether or not he had made a decision. Mr. Sowell personally told me that he was not interested in applying for the potential promotion to production supervisor because he had a lot of things going on with his rental properties outside of work, he was trying to build his business and he did not believe that he wanted to dedicate the time and the effort to being a supervisor at that time.

(Docket Entry No. 82, Merrick Affidavit at ¶ 7).

In May 2000, Robert Underwood, a co-employee and friend of the Plaintiff, contacted Plaintiff after Mulisa declined the Company's invitation to apply for the production supervisor vacancies on the second and third shifts. (Docket Entry No. 81 Underwood Affidavit at ¶¶ 6-7). According to Underwood:

7

> Also in May of 2000, and approximately two to four days after bing approached by Mr. Merrick and Mr. Northcutt, as further stated in paragraph 6 above, about being considered for a promotion to production supervisor, James A. Sowell and I talked in person with each other at work about being offered the opportunity to apply for, and to be considered by, the Company for a promotion to production supervisor. There is absolutely no doubt in my mind that on that same day in May of 2000, James A. Sowell expressly stated to me that he had also been recently approached by Operations Manager William Merrick and offered the opportunity to apply for a promotion to production supervisor and that he (Mr. Sowell) had also subsequently informed Mr. Merrick that he declined the Company's offer and the opportunity to apply and be considered for a production supervisor promotion.

Id. (emphasis supplied). In a May 23, 2000, e-mail, Duffey reported : "Here's a summary of recent activity regarding the open supervisor positions . . . Jimi Sowell, Alex Mulisa and Robert Underwood declined invitations to test." (Docket Entry No. 78, Duffey Affidavit, Exhibit A thereto).

Chris Saywer and Eric Hannah applied for the production supervisor promotion in May 2000, and were promoted on July 31, 2000. (Docket Entry No. 82, Merrick Affidavit at ¶ 9. The Company did not hire any external candidates. (Docket Entry No.85, Duffy Affidavit at ¶ 16). Hannah had four (4) plus years of production maintenance and sanitation supervisory experience, as well as twenty (20) plus years of industrial maintenance experience with Oscar Mayer Foods Incorporated, another food processing company located in Tennessee, prior to his work for the Defendant from 1991 to 1994. Id. at ¶¶ 18-19, Exhibit C. Hannah was a Petty Officer in the military personnel with four (4) years of service with the United States Navy. Id. at 18. When Plaintiff started in 1993, Hannah had two years more experience and had five (5) years more of experience with Country Delite farms, another local dairy company in Nashville from 1994 to 1999, before he returned to Level Valley in November 1999 as a senior maintenance mechanic. Id. Sawyer was a productive worker and was highly regarded by the plant's management. Id at ¶ 17.

As to the July 31, 2000 production supervisor promotion, Merrick, Northcutt and Duffey

8

insist that they promoted the best qualified applicant for the production supervisor promotions. (Docket Entry No. 82, Merrick Affidavit at ¶¶ 8-11; Docket Entry No. 83, Northcutt Affidavit at ¶¶ 10-13; and Docket Entry No. 85, Duffey Affidavit at ¶¶ 15-17).

Plaintiff's initial response to the Defendant's motion for summary judgment was to object to the unsigned affidavits and to allege improper scanning. (Docket Entry No. 90). The Defendant resubmitted all affidavits with signatures and verifications. (Docket Entry No. 99). See also Docket Entry Nos. 81 through 85. In a subsequent response, Plaintiff asserted, among other things, that Mulisa's, Hannah's and Merrick's affidavits are false; that Virginia Hoban, Plaintiff's supervisor, made offensive comments to him and did not recommend him for a promotion; that his qualifications, level of education and knowledge of the company's products are superior to the employees chosen for the 2000 promotions; and that Hannah lacks a college education. (Docket Entry No. 114). Plaintiff's response is not notarized. The attachments to Plaintiff's response include the Defendant's letters in 1999 to the NAACP, the National Urban League, a Native American Organization and an organization devoted to persons with disabilities, soliciting applications for jobs at its Antioch plant. (Docket Entry No. 114, Attachments thereto).

After the Defendant objected that his response was not verified, Plaintiff filed two affidavits that the job openings were not announced and the Defendant managers did not discuss the May 2000 promotions with him and that he was better qualified than the persons chosen. (Docket Entry No. 129 and 146). In his verified responses to the Defendant's Statement of Undisputed Facts, Plaintiff denied talking to Underwood about the promotion or being approached by management about the production supervisor promotion. (Docket Entry No. 144 at ¶ 23). Tammy L. McElhiney signed an affidavit that Mulisa and Northcutt did not speak to her about promotions in May 2000 and that

9

promotion openings at the Defendant's plant were not announced. (Docket Entry No. 114, Attachment 2 thereto.

As to Plaintiff's contention that he had to train the persons who were promoted to the supervisor positions, the undisputed facts are that the production supervisor's duties include: supervision of hourly personnel for daily production requirements, shipping and receiving schedules, quality and safety standards, maintaining production records, inspecting equipment to ensure proper sanitation guidelines are bing met and maintaining a trained and qualified workforce. (Docket Entry No. 85, Duffey Affidavit at ¶ 5). Since at least 1985, all newly hired production supervisors, operations manager and plaint managers are brought into the plant's laboratory to meet with both the laboratory supervisor and the laboratory technician to observe different procedures. (Docket Entry No. 82, Merrill affidavit at ¶ 12 and Docket Entry No. 83, Northcutt Affidavit at ¶ 14). The laboratory technician demonstrates product specifications and the work performed in the laboratory. (Docket Entry No. 83, Northcutt Affidavit at ¶ 14) Since at least 1993, all new production supervisors, operations managers and plant managers undergo weeks of training in each area of the Defendant's facility to ensure a complete and consistent understanding of all job functions and manufacturing processes. (Docket Entry No. 82, Merrill affidavit at ¶ 13).

The Defendant notes that on October 30, 2000, Plaintiff voluntarily responded to its company human resources department survey asking employees to comment on questions such as "What areas do you think we need to do better?" In his response, other than comments about entrance qualifications and telling new employees about extended work days and working in hot and cold climates, Plaintiff only other comment cited "Put[ting] the safety bingo drawings up daily." Prior to leaving the Company, Plaintiff never complained about any promotions. (Docket Entry No.

10

85, Duffey Affidavit at ¶¶28-29; Exhibits I-J).

### b. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

11

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he

12

respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

13

there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).

Of course, the designated portions of the record must be presented with enough

14

specificity that the district court can readily identify the facts upon which the
nonmoving party relies; but that need for specificity must be balanced against a
party's need to be fairly apprised of how much specificity the district court
requires. This notice can be adequately accomplished through a local court rule or
a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

   1. Complex cases are not necessarily inappropriate for summary judgment.

   2. Cases involving state of mind issues are not necessarily
   inappropriate for summary judgment.

   3. The movant must meet the initial burden of showing 'the absence of a
   genuine issue of material fact' as to an essential element of the non-movant's case.

   4. This burden may be met by pointing out to the court that the respondent,
   having had sufficient opportunity for discovery, has no evidence to support an
   essential element of his or her case.

   5. A court should apply a federal directed verdict standard in ruling on a
   motion for summary judgment. The inquiry on a summary judgment motion or a
   directed verdict motion is the same: 'whether the evidence presents a sufficient
   disagreement to require submission to a jury or whether it is so one-sided that the
   party must prevail as a matter of law.'

   6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the
   respondent must adduce more than a scintilla of evidence to overcome the motion.

   7. The substantive law governing the case will determine what issues of fact
   are material, and any heightened burden of proof required by the substantive law
   for an element of the respondent's case, such as proof by clear and convincing
   evidence, must be satisfied by the respondent.

15

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

For his remaining promotion claim under Title VII, Plaintiff must make a prima facie showing that:

(1) he is a member of a protected class;
(2) he applied for and was qualified for a promotion;
(3) he was considered for and was denied a promotion; and
(4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

White v. Columbus Metro Hous. Auth., 429 F.3d 232, 240 (6th Cir. 2005) (citations omitted).

Based upon the requests for admissions, the Defendant's managers solicited Plaintiff to

16

apply for these promotions, but Plaintiff did not apply for the July 31, 2000, production supervisor promotions. Aside from the managers' affidavits that Plaintiff rejected the opportunity to apply, Underwood, a co-worker and Plaintiff's friend, also testified in some detail that Plaintiff did not "apply"for the year 2000 production supervisor promotion. To be sure, Plaintiff makes a conclusory denial. After the defendant files a motion for summary judgment, the "[plaintiff] cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Barnhart v. Pickrel,Schaeffer & Ebeling, Co., 12 F.3d 1382, 1389 (6th Cir. 1993). Plaintiff has failed to present affirmative proof that could arguably support a judgment on his promotion claim.

Even accepting Plaintiff's statements as establishing a prima facie case of discrimination, the Defendant deemed the employees selected for these positions to be more objectively qualified for the production supervisor position than Plaintiff. Such proof establishes a legitimate nondiscriminatory reason for the Defendant's employment decisions. See White v. Columbus Metro Hous. Auth., 429 F.3d 232, 243-44 (6th Cir. 2005). Here, Hannah had four (4) plus years of industrial maintenance and sanitation supervisory experience, as well as twenty (20) plus years of industrial maintenance experience with another food processing company prior to his work for the Defendant in 1991 to 1994. When Plaintiff started in 1993, Hannah had two years more experience and had acquired five (5) years more of industrial maintenance mechanical experience. Plaintiff has not offered any proof that Sawyer was not a highly regarded and productive worker. The Court concludes that the Defendant had legitimate and non-discriminatory business reasons for its promotion decisions in 2000.

17

Once the employer "articulates" a legitimate nondiscriminatory reason for taking the challenged action, "the presumption of discrimination no longer exists" and the burden of "persuasion" shifts to the Plaintiff. Anthony v. BRT Auto Sealing Sys., Inc., 339 F.3d 506, 515 (6th Cir. 2003). "The ultimate burden of persuasion remains with [Plaintiff] at all times." Browning v. Dep't. of Army, 436 F.3d 692, 695 (6th Cir. 2006) (citations omitted). Moreover, the employer retains its "'lawful traditional management prerogatives in choosing among qualified candidates' and an employer has 'great[] flexibility in choosing a management-level employee'." Id.

From the Court's review, Plaintiff's main points are: that he has a college degree; that he was forced to train the employees who were promoted; and that one of the persons chosen for the contested promotions lacked qualifications in the manufacturing process. As to the first factor, Plaintiff has not shown that a college degree is a necessary qualification for these positions nor that Plaintiff has a degree that is relevant to this supervisor position. As a matter of law, Plaintiff's "perception of his competence, and the incompetence of those competing against him, is irrelevant." Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987). For the second factor, the Defendant's proof of its policy on company-wide training for supervisors is within its traditional prerogative and was implemented for sound reasons. There is not any proof that this training policy has any discriminatory purpose or effect. As to the third factor, the proof is that the company's supervisor has to be familiar with the manufacturing process, but does not have to perform that function.

In addition, the undisputed fact is that the Defendant offered one of the promotions to Mulisa, an African-American who declined. Plaintiff's proof includes letters from the Defendant

18

to various minority community groups to diversify its applicant pool. (Docket Entry No. 114, Attachments thereto). This proof undermines any inference that the Defendant's employment practices are racially exclusionary.

Even if the Court considered the merits of Plaintiff's hostile work environment and constructive charge claims, for each claim, "the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit. To determine if there is constructive discharge, both the employer's intent and the employee's objective feelings must be examined." Moore v. Kuka Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999).

Plaintiff has not shown any facts that the work environment at the Defendant's plant was intolerable. The proof reflects that the Defendant solicited Plaintiff for the promotions at issue as well as his views on how to improve its employment practices. Plaintiff fails to identify any act by the Defendant that could arguably be described as any effort to get Plaintiff to quit. These claims lack any factual support.

For these collective reasons stated, the Court concludes that the Defendant's motion for summary judgment should be granted.

Finally, Defendant's motion for sanctions arises from the Plaintiff's failure to appear at his scheduled deposition. The Defendant also notes that Plaintiff has never responded to any of Defendants's requests for admissions, second set of interrogatories and second set of requests for production of documents. Plaintiff has not provided a reasonable explanation for his failure to appear at his properly scheduled deposition. Thus, the Court awards the Defendant its costs associated with the deposition at issue and the preparation of its motion for sanctions. The Court

19

awards the Defendant $990.75 in expenses and costs as well as $967.50 in attorney fees incurred for plaintiff's failure to appear at his deposition and for the time expended to file this motion.

An appropriate Order is filed herewith.

Entered this the 30th day of August, 2006.

William J. Haynes, Jr.
United States District Judge